Good afternoon, everyone. First case on the docket this afternoon is People v. Kuhns, 5-10-0589. Mr. Grigorito, I think you're up. Thank you. May it please the Court, counsel? The issue presented by James Kuhns for review by this Court involves the presence and absence in the DUI statute, then in effect, of four words or a similar provision. Those four words were present in 11 subsections of the DUI statute in 2006 when the Court sentenced James Kuhns to probation on the charge of driving under the influence of alcohol. Those four words were noticeably absent from the subsection of the statute upon which the Court relied to impose what the Court believed to be a mandatory minimum of 720 hours of community service. The case arose from an arrest in the year 2006 in Effingham County, Illinois, on the charge of driving under the influence of alcohol. Mr. Kuhns didn't have an Illinois driver's license. In 1999, the California driver's license that James Kuhns had was suspended as a result of a DUI violation in the state of California. Mr. Kuhns appeared before the Effingham County Circuit Court without counsel. He and the Assistant State's Attorney presented a proposed probation disposition for the Court's consideration. Mr. Kuhns entered a plea of guilty to the charge of driving under the influence of alcohol, and based upon what we submit as a misapprehension concerning whether the mandatory minimum sentencing provision applied, the Court imposed 720 hours of community service. In the next two years or so, Mr. Kuhns performed nearly 500 hours of that community service. A petition to revoke the probation was filed based upon the failure to complete all of the community service. A motion to modify the probation sentence was filed. The motion was premised upon two factors. First, the prosecution agreed to the modification, which, if approved, would have resulted in the amount of community service being set at $499.5, the amount completed, and then an additional fine at the rate of $5 per hour for the community service that hadn't been completed. The Court rejected the proposed disposition. The Court that had initially imposed sentence maintained the opinion that the statute in effect in 2006 required a mandatory minimum of 720 hours of community service. The case proceeded then to a hearing on the motion to modify. The Court denied it for the same reason. The motion to reconsider denied it for the same reason. The case eventually proceeded to a hearing on a petition to revoke based upon a stipulation as to the evidence that would be presented by the prosecution, and now the case is before this Court for review. The issue, again, revolves around those four words, and there are two provisions in the statute set forth on page 6 of the brief. The first provision that is relevant here is the portion of the statute then in effect that provided that if a person commits a violation of the DUI statute, and if that violation occurs during a period in which the driving privileges are revoked or suspended, where the revocation or suspension was for a violation of subsection A, the Illinois DUI statute, or section 11-501.1, the Illinois summary suspension statute, then mandatory minimums apply, either incarceration or community service. During the course of the hearings on the motion to modify and the motion to reconsider, the Court acknowledged that Mr. Kuntz's driver's license was not revoked, so that provision of the statute was inapplicable. The Court acknowledged that Mr. Kuntz's driver's license, which was a California driver's license, was not suspended for a violation of the Illinois DUI statute or based upon an Illinois summary suspension. However, the Court determined that because Mr. Kuntz's California driver's license was suspended as a result of a California DUI, that the next provision of the statute set forth on page 6 of the brief came into play. And that provision of the DUI statute then stated, that any reference to a prior violation of subsection A or a similar provision includes any violation of a provision of a law, of a local ordinance or a provision of a law of another state that is similar to a violation of subsection A. Based upon that language, the Court found that Mr. Kuntz's driver's license was suspended. It was suspended for a DUI, albeit a DUI in the state of California, and hence the Court concluded that the mandatory minimum applies. Those four words, or a similar provision, we submit are critical in the determination of this case. I mentioned that those four words are present in 11 subsections of that statute that was in effect in 2006. And those 11 subsections of the statute are also cited in the brief on page 15, where the legislature specifically made reference to the words violation of subsection A or a similar provision. Mr. Kuntz submits that that phrase, violation of subsection A or a similar provision, is the phrase that the legislature referred to in that section of the statute on page 6, where the legislature said any reference to a prior, we submit the phrase, violation of subsection A or a similar provision includes a violation of a law of another state similar to a violation of the DUI statute. Wouldn't that be redundant? Why do they need to include the or a similar provision language in a specific statute and also have a separate statute that purports on its face to cover any situation where you're referring to a prior violation? Actually, I agree in part with what you're suggesting, and that is in the statute that relates to mandatory minimum, the legislature could have simply said where the revocation or suspension was for a violation of subsection A or section 11501 or a similar provision of the law of another state. To that extent, it would have been clear. Why couldn't it have been the intent of the legislature in passing 11-501B11 to, in effect, say, if there are any of these statutes, we forgot to put in this or a similar provision language, we want to cover it with this catch-all. And it would be covered with the catch-all if in the mandatory minimum provision of the statute the legislature included those four words after the phrase a violation of subsection A. So all the legislature would have had to say is a violation of subsection A or a similar provision and based upon B-11, again, there wouldn't be a question concerning applicability. Okay, so your argument is that in order for a similar provision of another state to be included in a sentencing provision, there has to be both this separate statute, B-11, and this language in the specific statute. Only because the legislature chose to use these words. The legislature could have eliminated B-11 and simply changed the mandatory minimum provision to make it clear. And that would have covered it. Would have covered it. The legislature didn't do that in this provision of the DUI statute, but in 11 subsections of that same statute added those four words or a similar provision following the words a violation of subsection A. So what we have here is the legislature choosing to include those four words following the phrase a violation of subsection A in 11 subsections, not including those four words in the mandatory minimum provision. So if we now have to pick and choose what we're going to disregard and what we're going to give way to, what do we choose? I submit that you choose the language that the legislature used, and that is when the legislature formulated that phrase, a violation of subsection A or a similar provision, they intended it to have some meaning, and they expressed that intention by using that phrase, including those four words, in 11 subsections. They chose for whatever reason not to use those four words in the mandatory minimum sentencing subsection. Now, this Court has previously addressed an analogous situation in its people versus jet opinion. That was driving the license suspended, where there was a trilogy of cases. Brown, Wheatley, and jet. Brown and Wheatley were third district opinions. Of course, jet was the opinion in this Court. And in those cases, similar issue. Did the Illinois driving the license suspended or revoked statute apply to a nonresident who was driving in Illinois on a foreign license that was suspended or revoked? In Brown, the language was at a time when the driver's license is revoked or suspended as provided by this act, the Illinois statute, or any other act. The public court said that phrase, any other act, refers to any other Illinois statute rather than the statute of another state. So the legislature comes along immensely and says, under the statute, when the driver's license is revoked or suspended as provided by this code, the Illinois statute, or any other law. And the appellate court says, doesn't apply to a nonresident. Then, finally, the legislature comes along and says, driver's license revoked or suspended as provided by this code or the law of another state. And then the case comes to this Court, and this Court essentially said, it's clear it didn't apply in those prior two cases, but they've made it crystal clear now. The intent of the legislature is clear. Our driving the license suspended or revoked statute applies even to a nonresident driving Illinois on a suspended or revoked foreign license. That's analogous to Mr. Kucinich. He's driving in Illinois at a time when his California license had been suspended in 1999. He doesn't have an Illinois license. The sentencing provision here provides for the mandatory minimum if the license is suspended as a result of an Illinois DUI or an Illinois summary suspension. It's clear that that mandatory minimum sentencing provision doesn't apply to the nonresident driving in Illinois with a suspended or revoked license because it's not suspended or revoked for an Illinois DUI or an Illinois summary suspension. The question that arises, does B-11 resolve the issue? If those four words were present, if the license was suspended or revoked for a violation of subsection A or a similar provision, no question. The legislature didn't include that four-word phrase in that subsection of the statute, despite including it in 11 other subsections of the statute. For those reasons, Mr. Kucinich, I submit the absence of those four words from that mandatory minimum sentencing provision of the statute determines the outcome of this case. All right. Thank you, Mr. Kucinich. Your honors, may it please the court. My name is Timothy James Ting, and I represent the people of the state of Illinois. Your honors, in my time before you, I will show you why the defense's conviction for driving under the influence while driving on a license revoked or suspended. I have one question on the facts. Maybe I missed it. He had a DUI in Illinois. Yes. At the time he got this driving on suspended. Yes. What happened to the DUI in Illinois? Isn't that – was he guilty or not guilty on the DUI in Illinois? That's what this case is about. I know, but this is driving on a suspended, not just a – oh, it's – No, this is driving under the influence while on a license suspended. But they didn't do a – there could have been a lesser included. Yes, I suppose it could, but for this particular case, he was convicted of driving under the influence while a license was suspended. Is that clear about your question? Your honors, here it all comes down to context. The person says, I'm going to jail. Well, it depends on what their mood is as far as what that context or that particular statement means. If it's a correctional officer, he's merely going to his job. If it's a defendant, he may be facing the prospect of losing his freedom. Context gives meaning to the words we say. And when the legislature creates a statute in which it says particularly in its section, any reference to a prior violation of subsection A or a similar provision includes any violation of a local ordinance or a provision of a law of another state that is similar to a violation of subsection A of this section. That is within the statute. This is not within another statute. This is not within another part of the traffic code. This is within the particular statute that the defendant was charged under, 6.5 ILSC 5-11-501. The only difference is that this is in subsection B-11. And the particular mandatory minimum sentencing provisions were under subsection C-2.2. Imparting materia, while some certainly could be applicable in this particular case, isn't even the right rule of law to apply. Rather, it's the first and foremost rule of statutory construction, which is plain meaning. As the Illinois Supreme Court has long stated, and I quote, the primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislation. Again, it's equally well settled as, again, the Illinois Supreme Court states, the simplest and surest means of effectuating this goal is to read the statutory language itself and give the words their plain and ordinary meaning. Now, Justice Stewart, you have a question. Would B-11, subsection B-11, be essentially rendered meaningless if it's not read in conjunction with the rest of the statute? Your Honor, the answer is unequivocally yes. Subsection B-11 was designed as a catch-all phrase just in case the legislature happened to not place the particularized words that would give credence to the jurisdiction for other out-of-state violations. Here, the record is unequivocal. The defendant had a driving-under-the-influence charge in California. He had a suspended license because of that. And then when he came to Illinois, he got another driving-under-the-influence conviction while his license was suspended in California. The intent of the legislature was to penalize individuals who had licenses that were suspended, not just from Illinois but from anything. Surely, the legislature, when it was enacting this law, did not create a more serious set of penalties for individuals who only had their license revoked in Illinois or suspended in Illinois. Rather, it was the main claim of the offense that driving under the influence is a serious crime. But to do so when one doesn't even have the authority to have a license in the state is far more serious. That was what the legislature was determining when it made its mandatory minimum sentencing provisions. And for the defendant to wax poetic that somehow this was not the case here goes against the intent and the actual language of the legislature. Again, this is not from another subsection of another statute within the Illinois Traffic Code. This is within the same statute. The only difference is that it's subsection B-1-1, which is describing the applicability of the different crimes. Subsection C and all of the provisions therein deal with the mandatory minimum sentencing provisions. Anyone who clearly reads the statute would first read subsection B-1-1, which says any violation from any state and thereby understand that when they get to the mandatory minimum sentencing provisions, the reference to a subsection A violation would apply to any other state. That is the clear, plain meaning of reading this statute. And to say otherwise lies in the face of the meaning of subsection B-1-1. Indeed, what would the purpose be for subsection B-1-1 if not a catch-all offense? I implore this court to ask that question because the answer is there would be no meaning. Subsection B-1-1 was designed as a catch-all phrase. It happens commonly in many statutes because the legislature understands that sometimes it doesn't write these statutes as particularly as it can and thereby creates confusion later on in the appellate courts. But here the legislature did every single thing they could to make sure – to ensure that subsection B-1-1 indicated that all violations from any state would have the same applicability as pertains to the mandatory minimum sentencing provisions found in subsection C. Your Honors, Mr. DeVarino states that there are some cases that can give us some understanding of statutory construction. Particularly, he looks at three cases, Brown, Wheatley, and Jett. First and foremost, these cases are distinguishable because they're not based on the statute in the case of Barr. Rather, they're based on the driving with a license with folks statute, not the DUI statute. But even if we were to look at these statutes and analogize the statutory construction analysis, they still do not place themselves within the defendant's realm of authority. Brown, the actual language in that was any other act. That was the language the court determined. It said any other act does not apply to some scope beyond acts within that state. In Jett or in Wheatley, it was the same thing, as provided by this code or any other law. Again, the court said that was not specific enough to state that there was any other statement as far as applicability of those violations. In Jett, this very court stated that the language, and I quote, pursuant to this code or under the law of another state, was a clear reference to an out-of-state violation that would have applicability to the sentencing provisions and the driving with license for both. It is the same here. The only difference is that it's not particularly under subsection C2.2. But subsection C2.2 deals with mandatory minimum sentencing violations. It prescribes the actual amount of community service and what the defendant must endure as part of the penalty for his violation under subsection A. It does not deal necessarily with going through every single violation that must happen. Grant, could the legislature have made this more clear by simply putting under subsection C2.2 of any other state violation of any law of any other state? Absolutely. It would be more clear. But the legislature, in its understanding, decided that the best way to do this, to make it simple for everyone, was to put within the statute, subsection B-1.1, any violation of subsection A with a similar provision to either this state or any violation of another state would be clear enough. And it was. This case has never been addressed. This type of issue has never been addressed in Illinois. It's a case of first impression. But I say that it's a case of first impression not because it's some novel idea but because defendants in the past simply have not even thought that this would be a way to argue. I mean, certainly the statute is clear enough. And the reason it hasn't come before appellate courts before is because it is clear from its plain reading. And so I would urge this court to publish a decision that says clearly when a statute within its own provisions, not another statute referring to another subsection, but within its own provision state a violation of any other state, that is a clear catch-all reference to violations from other states, and it should be deemed as such by defendants. The statutes cannot be written in such a precise way that they cover every single basis of argument. But when there are catch-all provisions, they should be honored and read as such. Does this court have any questions? It's not in your brief. Did you by any chance check the legislative history of B-1-1? Your Honor, I looked through the legislative history, and there was – it was unclear as far as whether the legislature had actually talked about this particular provision. I don't believe they did. But when I was citing through that legislative history, there's a lot of different changes to the traffic code, as I'm sure this court's aware. And there's X-ing out and crossing out, and they're taking things in and putting things out. They're changing the mandatory minimum sensing provisions. So a clear logical inference would be that because of all this changing around, the legislature wanted to be clear just in case they were not clear enough in a particular subsection, that subsection B-1-1 would be that catch-all provision. It would be that catch-all provision that, in the case that they did not make it clear enough within a particular subsection, that they would still have that. So there is quite a bit of legislative history, but nothing that goes directly to this particular issue. Do you have any other questions? Thank you for your time. Any rebuttal, Mr. Viverito? If I may, briefly. A piece of legislative history that is in the present is that post-coups, the legislature amended the mandatory minimum provision of the statute so that it provides for this mandatory minimum in this instance. When the person committed a violation of subsection A during a period in which the defendant's driving privileges are revoked or suspended, where the revocation or suspension was for a violation of subsection A or a similar provision. That's what it says now. That suggests that the word referenced in B-1-1 relates to the phrase violation of subsection A or a similar provision. Thank you. Thank you. Thank you both for your briefs and your arguments. We appreciate your time and effort, and we'll take this matter under advisement.